May it please the Court, I'm Dennis Polsky and I represent Petitioner Robert Starkey. I want to focus my argument through the lens of Section 2254 D.1, which we all know puts a big limit on petitioners in habeas cases, because it says, and the limit where I'm looking at specifically, is that we can't prevail unless the state court's adjudication of the merits result in a decision that's contrary to clearly established federal law as determined by the Supreme Court of the United States. So where did the state court rule? How did the state court rule? It took the position that if the location of the grand jury proceedings created an appearance of impropriety, that claimed error was overcome by proof beyond a reasonable doubt at trial. And that was the defense that the state took at the post-conviction trial. Before that trial, in another trial, another court had held that the appearance of impropriety was a due process violation and he set aside a conviction. I don't know whether that's what colored the state to make this the defense in this case, but it is. And so the state court went off on assuming an impropriety, a due process violation, but saying you lose because you can't prove prejudice. Well, that violates clearly established federal law. The source for that state court ruling comes from McKinney, decided by the Supreme Court in 1986. Do we have to accept the assumption of the court that it was a constitutional violation? No, you don't. To get to the constitutional. What if we say, no, no, that's, you know, we understand grand jury was held at the abuse center. Sure. Our experience is that grand juries are frequently, sometimes they're close to prison facilities and so forth and so on. But we don't believe that that's a constitutional violation. So let's say we say no, no, we don't think it is. Okay. What then? Well, then you look to what is the test for determining whether or not there is a due process violation. Whether there is a language used by the Supreme Court and Bank of Nova Scotia, whether there's a systemic flaw in the grand jury proceedings. And they define that very specifically, saying that the structure, you have a systemic flaw. When the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair. So fundamentally unfair, that keys us right away. We're talking about. Where's the record? What record do we look at to determine whether or not if it's held in a child abuse center, it's fundamentally unfair? Well, you ask yourself the question, you back up to the question of due process. Due process talks about an appearance of bias. That's the test. And when they talk about appearance of bias, you go to 1972 Peters v. Kiff, where they talk about impropriety in grand juries and appearance of bias. And in Peters, they give a description, a broad range description of due process violations that can occur. They talk about, first, jurors who are incapable of rendering an impartial verdict. Second, they talk about intimidation by threat of violence. Third, they talk about forming a fixed opinion from newspaper publicity. And then they switch focus over even more specifically and give you examples of bias. And they cite Toomey, which is where a judge has a financial stake in the outcome. And they talk about a jury that's put in the protective custody of principal prosecution witnesses. Again, as examples. And then the key, getting to prejudice, which I know is the focus here, is this case, Peters v. Kiff. It did involve race, arbitrary exclusion of blacks from the grand jury. But interestingly, when they address the question of prejudice, you've got a white defendant and all white grand jurors. And the court says, that's prejudice nevertheless, because of the appearance of bias that results in that kind of a case. They say, proof of, this is a quote, proof of actual harm or lack of harm is virtually impossible to produce. Therefore, prejudice is presumed. So what we're saying here, we have a systemic flaw. There's no doubt about that, because the district attorney says, only in cases of child abuse, only in those cases, we're going to have grand jury proceedings at a child abuse assessment center. They give the grand jurors the option of a full tour of the assessment center by either the DA or a staff person. That is an appearance of bias. This Court has recognized that child abuse cases are highly emotional cases. We all know that. And I guess a parallel example would be if a district attorney said, well, you know what? In our homicide cases, it would be more convenient to go to the morgue and hold our grand jury proceedings there, because the doctors who do the postmortems are there at the morgue. So we're going to take, in our homicide cases, we're going to hold the grand jury at the morgue. Again, it's the appearance of bias that arises. That's what we're talking about. And I know the State, and I know, I think, from your questions, you're saying, well, where's your evidence? Where's your evidence? But the nature of the violation, we can't give you evidence that shows bias, because that's the impossibility. We don't get to know what the grand jurors were thinking when they went into that appearance. Breyer. But, I mean, we can take a case and you say, look, all blacks are excluded from a grand jury. That's a systematic exclusion under a recognized set of laws that you can't do that. It's not so clear that by holding a grand jury at an abuse center, which the State would argue there are good and sufficient reasons to do it there with respect to transporting children and being around certain areas and so forth, that there's a legitimate State concern. I mean, I don't know what the legitimate State interest would be in excluding blacks from a grand jury. You know, it wouldn't be there. It just wouldn't be there. But that's a different case than where you're holding the grand jury in a child abuse situation, I would think. Well, you know, one of the things you mentioned, and the point you're making, was it's not clear. And I know the State made that argument before, and the district court found the same thing. They cited death, a 1962 case in which the Supreme Court said, you know, we're not going to decide that issue now. That may well be a violation of due process to have bias in a grand jury, but we're not going to decide that. And the district court says, well, you know what, you don't have any clearly established law that could be violated, so you can't prevail on this claim. But that's irrelevant in our case. Because? Because the — if you look at 2254d1, it talks about the adjudication on the merits by the State court and whether it's contrary to clearly established law. He adjudicated by applying mechanic. By assuming — he never adjudicated the due process question. He assumed a due process violation. He adjudicated the prejudice question, and he applied mechanic instead of Bank of Nova Scotia. That's the violation of clearly established law. To win, we need to meet the Brecht standard, but we don't need to have clearly established law. You know, I'm not sure I can read 2254 the way you're wanting to read it. In a way, I wish I could, because we are often in a position of thinking that the State court might have gotten it wrong, but AEDPA says to us, well, it's got to be really wrong. I don't know that AEDPA says to us that any time a State court passes over a question, assuming or whatever it is, that we don't owe to AEDPA a deference standard that says, well, when we go back and look at that question, that we don't have to look to clearly established Supreme Court law. I think we do. I would beg to differ. That's a tough question. That would be a tough hurdle. And if you take the district court's language even on that, she says, because the Supreme Court specifically decided not to address this issue of grand jury bias, any decision by a lower court as to whether such bias was a violation of the 14th Amendment cannot be contrary to Supreme Court law. Well, any such decision about such bias being a violation of the 14th Amendment, there was no decision about whether bias violates the 14th Amendment. The State court never addressed the issue whatsoever. So you've got to be clear. I mean, I hear the argument. It's a perfectly plausible argument. I'm a little concerned I can't get there. Sure. And I'll say, if I could have a minute of your time. Sure. Thank you. May it please the Court, Caroline Alexander for Respondent Jane Hill. Let me take up where we left off. I think that's exactly the question, Your Honors, is how does 2254d apply in this situation? The State court's decision cannot be contrary to or an unreasonable application of controlling Supreme Court precedent. And what the Supreme Court has said and this Court has said is that also includes the situation where the State court refused or declined to extend Supreme Court precedent reasonably. Now, all of the cases that Petitioner relies on for this structural error, constitutional error argument, concern only the systematic exclusion of jurors by race or by gender and valor. And all of the U.S. Supreme Court cases talk about the unique and pernicious harm that occurs when you exclude jurors systematically. That's not this case. This case is whether it's a due process violation to hold a grand jury proceeding in an abuse assessment center for the same control measure. Let me ask you this. Is that practice still going on with grand juries? It is not, Your Honor. No. How long did it go on? You know, I don't have a sense of that. This is the first case I've seen with that, although I have seen other older cases. It didn't, all I know is it didn't go on for very long. What in the world was the DA thinking? I mean, I can see absolutely no excuse for doing that. I understand, Your Honor. And I think truly, and you can see in his affidavit in this proceeding, he truly thought it was for the sake of children. And the record shows in this case, this particular child wasn't evaluated there, but she was a little girl who was deaf, you know, who I think had some difficulty in disclosing the abuse in the first place. And so I think he truly did think it was for the ease of children who had to testify. And this child did testify in this proceeding. So the children are being in that center. So the grand jury is over there. But that doesn't justify giving them a tour of the facility. No, it does not, Your Honor. And I think going to Judge Breyer's question on that related issue, I think, is, you know, what would you have to show? Well, I think Petitioner had that opportunity in post-conviction. And I think arguably, it's not this record, but you could make a record where you could show that all of the grand jurors did take the tour and they were given a lecture about abuse or, you know, all of the things that you could imagine could be in a record that could show a due process violation. But I think because it wasn't unreasonable for the state court not to extend the exclusion cases to this situation, I think the Petitioner would have to develop a record like that to show a due process violation. The thing that I wanted to focus on for a couple of minutes is the harmless error analysis, though. And when I was preparing for argument, I had a little bit of a different take than the way this case had always been briefed. And that's this. If it's not structural error, a harmless error analysis applies. In Mechanic and Bank v. Nova Scotia, those weren't habeas cases. Those were federal criminal cases involving violations of the federal criminal rules or federal rules in some respect. But this is a habeas case. So Petitioner wants the rule in Bank v. Nova Scotia to apply. I'm not so sure that either one applies per se. I think we still have to apply Brecht because that's what we do. If it's not structural error in a habeas case, we have to apply the harmless error analysis in Brecht. Do we owe deference, assuming we're applying Brecht, and assuming that the state court has engaged in a harmless error analysis, which it did here, are we required by Edput to defer not only to the substantive conclusion that there was a violation, but also to the harmless error analysis of the state court? That's a good question, Your Honor. In Frye, the U.S. Supreme Court addressed what standard we apply. Is it Brecht or is it Chapman? Well, I take that back. I'm sorry. Brecht decided that question. We applied the standard in Kotickas, which now is the Brecht standard. In Frye, the court said, well, what do we do when the state court never applies a harmless error analysis? Well, we do it anyway, and we apply Brecht. But the question doesn't exist. I've got a different question, and that is, let's assume that the state court does its harmless error analysis. Does Brecht build in the deference that we're already required to do it, or do we owe an additional layer of deference because it's Edput? I have honestly never read a case where either this court or the Supreme Court has said we owe deference to a harmless error analysis. This court is obligated to apply Brecht. But if, in fact, what the state post-conviction court did was apply a version of Brecht, I don't know that necessarily that requires deference. I think where the deference analysis comes in is whether the post-conviction court should have applied Peters v. Kiff or some other standard in reaching the due process violation. But to be honest, I am not sure about that. That's a puzzle for me. I'm puzzling over the question. Okay. And I think there's another puzzle in there as well, and that is, what's the focus of Brecht? If we apply Brecht, either because we owe deference to the post-conviction court's decision or this court simply is obligated to apply Brecht, what's the focus? I — the way I briefed it was, when we apply Brecht, assuming there's a constitutional due process violation here, we apply Brecht, and the question that we ask is whether there was a substantial and injurious effect on the grand jury's decision to indict. But when I reread my brief, I thought, wow, you know, I'm not sure that that's right. It may be that Brecht requires us to ask, was there a substantial and injurious effect on the jury's verdict? And that, in a sense, embodies that mechanic standard and sort of transposes it onto a habeas case. It's the same standard, then. In other words, if the jury's verdict is valid and there's no challenge to that, any harm in the grand jury proceedings is correct. Well, there isn't a — in this case, there's not a challenge to that, right? That's correct. There is a challenge. Okay. So, I mean, because the jury verdict, jury verdict, and if there were ills in connection with the grand jury proceedings, they were overcome by having the trial. I mean, that's what Justice Scalia says in these cases, is that a grand — you're not entitled to two trials, not that — you don't have to have the exculpatory evidence and so forth and so on in the grand jury proceedings because it's going to be a trial. It's going to be one trial, and you get it all for that one trial. That's the important event that corrects perhaps the unfair — some of the aspects of the presentation of the case of the grand jury, some, not all, which are unfair. Exactly. And so that would be your argument here. Exactly, Your Honor. So because the grand jury's decision to indict is just whether there's probable cause to indict. Grand jury finds, well, yes, in fact, there's a reasonable — it was beyond reasonable doubt that he actually committed the crime. So that does cure any harm. I mean, it would be a very different case if they took the trial jury and took them down to the abuse center and gave a tour and so forth and so on. Yeah. Yeah. That would be a different situation, certainly. But I think in this case it very well may be that that's exactly how we take that mechanic standard and transpose it onto a federal habeas. In all these cases are harmless error analysis. Bank of Nova Scotia, Mechanic, Brecht, they're all harmless error. It's just a matter of how it works in this particular situation. If, in fact, the Bank of Nova Scotia standard, which is a substantial and injurious effect on the grand jury's decision to indict, we can transpose that as well. And it's either one of those. It's — those cases represent how the Brecht standard works in a habeas case. No further questions? Thank you. Thank you. Would you like a minute? Sure. Yes, sure. I'm going to try to get there very quick. For you, Judge Breyer, I would like to direct you to page 16 of my brief on your question about race being involved. In two cases that I've cited there, this Court, Isgro and Larazolo, used the language out of Bank of Nova Scotia, which is were there structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice, that they were not race cases. And I, frankly, didn't have time, while I was listening to her argument, to re-look at them to see what the facts were. But I do recall they were not race cases at all. The Bank of Nova Scotia test comes into play irrespective of whether or not race is involved. So just a quick aside on that. Brecht, the actual language is what her thought was about prejudice. It says, quote, whether the error had a substantial and injurious effect or influence in determining the jury's verdict. Well, that's not at play here. And in Bank of Nova Scotia, they discuss that. In Bank of Nova Scotia, they say that because the focus is Justice O'Connor's former concurring opinion in Mechanic, which now is the majority in Nova Scotia, which puts Mechanic out of play. Mechanic doesn't play anymore. They say that when you have a systemic flaw, a structural defect, again, you presume prejudice. And when they reach that, they even cite caudiacus. They say for a Bank of Nova Scotia one, for a technical violation, we're going to take the caudiacus Brecht standard. But we recognize that when there's a structural defect, there's presumed prejudice. So that's my Brecht point. And the very last point, a quick argument that she made about probable cause by the grand jury and a pettit jury undoes that. Well, as the language in my brief points out, a grand jury does a lot more than just probable cause, and I'm not challenging the probable cause finding. The grand jury also gets to decide do we indict at all, how many counts, felony or misdemeanor. They've got a lot of discretion. So it's not just do we find probable cause. Well, I think that's – I mean, there may be differences of opinions as to all of that discretion and how it's to be exercised and so forth. But we don't have to get there, do we? We don't have to do an analysis of the power of a grand jury. I'm just pointing out, I think that was just – I may have my justice wrong. I want to say, Justice Brennan, I probably got the wrong one. In Vasquez, he talks about those other roles that are important when you're looking at a systemic violation. Thank you very much. Thank both of you for your helpful argument. Starkey v. Hill is now submitted for decision. The last case on the argument calendar this morning, Ham v. Itex Corporation.
judges: Fletcher, Fisher, Breyer